UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
TERRENCE P. SCHOUENBORG,

                              Petitioner,

                                                MEMORANDUM & ORDER
          -against-                             08-CV-2865(JS)

SUPERINTENDENT, AUBURN CORRECTIONAL
FACILITY[1],

                              Respondent.
----------------------------------X
APPEARANCES
For Petitioner:        Terrence P. Schouenborg , pro se
                       05A3388
                       Auburn Correctional Facility
                       P.O. Box 618
                       Auburn, NY 13024

For Respondent:        Edward A. Bannan, Esq.
                       Suffolk County District Attorney's Office
                       200 Center Drive
                       Riverhead, NY 11901

SEYBERT, District Judge:

          On January 27, 2005, following a jury trial in the County

Court of Suffolk County (Crecca, J.), pro se Petitioner Terrence

Paul Schouenborg ("Petitioner") was convicted of two counts of

Sodomy in the First Degree in violation of New York Penal Law

§ 130.50(1); two counts of Sodomy in the Second Degree in violation

of New York Penal Law § 130.45(1); four counts of Sexual Abuse in

the Second Degree in violation of New York Penal Law § 130.65(1);

----------------------------
[1] The proper Respondent in this action is the Superintendent of the
Auburn Correctional Facility. See generally 28 U.S.C. § 2254. The
Clerk of the Court is directed to amend the caption accordingly.

and three counts of Endangering the Welfare of a Child in violation of New York Penal Law § 260.10(1). On June 16, 2005, following a hearing pursuant to Section 400.21 of New York Criminal Procedure Law, Petitioner was sentenced as a persistent felony offender to an indeterminate term of imprisonment of twenty years to life for each of his convictions for Sodomy in the First Degree; an indeterminate term of imprisonment of twenty years to life for each of his convictions for Sodomy in the Second Degree and Sexual Abuse; and one year of imprisonment for each of his convictions for Endangering the Welfare a Child. The sentences were imposed concurrently.

Presently before the Court are the Petition for a Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2254 ("Section 2254"), Petitioner's letter motion to stay (Docket Entry 13), and Petitioner's letter motion to compel (Docket Entry 15). For the reasons set forth below, Petitioner's motion for a stay is GRANTED IN PART and DENIED IN PART and his motion to compel transcripts is DENIED with leave to refile. In addition, the Court <u>sua</u> <u>sponte</u> appoints pro bono counsel.

BACKGROUND

I.   The Underlying Facts

On September 16, 2003, thirteen-year-old SV[2], a female student in the eighth grade, went to Tanner Park in Copiague, New York with two friends, LJ, also a female student, and JP, a male student.  LJ subsequently left the park to return home.  (Trial Tr. 591-602.)  SV and JP remained at the park, where a man who had just parked his vehicle approached them.  (Id. at 720.)  The man asked them if they had "rolling papers."  (Id.)  JP answered in the negative and the man went back to his car and drove away.  (Id. at 720-21.)

Shortly thereafter, the man returned and asked SV and JP if they wanted to smoke.  (Id. at 722.)  SV answered that she would, and SV and JP got into the man's car.  (Id.)  The three drove around, drank beer, and smoked cigarettes.  (Id. at 724-28.)  The driver identified himself as Paul and told the two teenagers that he was twenty-seven years old.  (Id. at 603-10, 723.)  After a while, the driver dropped JP off at his home.  (Id. at 621, 728.)  Once JP left the car, the man drove around for a while, ultimately parking the car in front of a flower shop, where he climbed into the rear seat and sexually assaulted and sodomized SV.  (Id. at

_____

[2] Due to the minority ages of SV, LJ, and JP at the time of the incident, they are identified only by their initials.

620-26, 629-36.)

After the assault, SV climbed into the front seat and was able to escape from the vehicle. (Id. at 637.) She ran to LJ's home where the police were called. (Id. at 637-39.)

II. The Investigation

Police Officer Sonia Martinez arrived at LJ's home at approximately 11:00 p.m. (Id. at 561.) SV told Officer Martinez that her attacker was a "white Hispanic-looking male," and upon further questioning, stated that her attacker was white. (Id. at 574-75.) SV described her assailant as having a mustache and beard, blue eyes, and as driving a white vehicle with black lettering on the side. (Id. at 581.)

Detectives subsequently arrived, including Detective Joseph Brittelli, who took control of the investigation. SV drove around with the detectives and showed them the location of her assault, the parking lot of a florist shop. (Id. at 802.) SV indicated that her attacker discarded a cigarette butt, and the detectives located and retrieved one for forensic testing. (Id. at 802-03.) The detectives also sent a Marlboro butt that SV's assailant placed in SV's purse to the lab for testing. (Id. at 853-54.)

The detectives then transported SV to the Sexual Assault Nurse Examiner ("SANE") at Good Samaritan Hospital for examination

and for recovery of physical evidence on her person. (<u>Id.</u> at 807-08.) The SANE nurse photographed SV's injuries, took swabs of fluids and other evidence from her vaginal and anal areas, and collected a urine sample. (<u>Id.</u> at 1021-61, 1068.) Detective Brittelli gathered all of the evidence from the examination and sent it to the Suffolk County Crime Lab. (<u>Id.</u> at 852.) He attempted to take a statement from SV after her examination, but she was too tired to cooperate at that time. (<u>Id.</u> at 814.)

On September 29, 2003, Detective Brittelli obtained SV's statement. (<u>Id.</u> at 816-17.) This statement, along with JP's statement, led detectives to arrest Petitioner on October 23, 2003, at which time they seized Petitioner's vehicle to search it for evidence. (<u>Id.</u> at 829-37, 863.) On the day of the arrest, police prepared a lineup for SV to view. (<u>Id.</u> at 875-76.) SV was shown two lineups; each time the participants were rearranged and each time SV positively identified Petitioner as her attacker. (<u>Id.</u> at 650-52, 889-91.)

On August 30, 2004, JP viewed a lineup which included Petitioner, but was unable to identify any of the six men. (<u>Id.</u> at 730-31.) JP was, however, able to identify a picture of Petitioner's vehicle as the vehicle he and SV entered on September 16, 2003. (<u>Id.</u> at 729-30.)

III.  <u>The Trial</u>

SV testified at trial and identified Petitioner as her assailant in court.  (<u>Id.</u> at 636.)

During the trial, defense counsel focused on the inconsistencies in SV's version of events on the night of the incident.  Specifically, defense counsel argued that SV identified, and the police arrested, the wrong man.  (<u>Id.</u> at 552.)  He noted that at various times, SV described her assailant as white, Hispanic, Puerto Rican, and black.  (<u>Id.</u> at 685-87, 927.) Furthermore, during her various interviews with police, SV failed to mention that her assailant had any tattoos, despite the fact that Petitioner has multiple tattoos, and gave varying descriptions of the assailant's clothing.  (<u>Id.</u> at 920-26, 932-33.) Additionally, SV's description of the vehicle she entered that night did not include what defense counsel characterized as a distinctive sticker on the back window of Petitioner's vehicle or a distinctive steering wheel.  (<u>Id.</u> at 915-919.)

Defense counsel intimated that perhaps the holes in SV's story were partially attributable to her drinking beer and smoking marijuana on the night of the incident.  SV admitted to drinking beer that night, but denied smoking marijuana.  (<u>Id.</u> at 681.) However, JP testified that SV did smoke marijuana.  (<u>Id.</u> at 732-33.)  Officer Martinez testified that upon her arrival at LJ's

home, she did not smell alcohol or marijuana on SV.  (<u>Id.</u> at 572.)

The prosecution elicited extensive testimony about the physical evidence recovered from SV and from Petitioner's vehicle. Both the exterior and interior of Petitioner's vehicle were dusted for fingerprints, but none were found.  (<u>Id.</u> at 939.)  The vehicle was also tested for SV's blood because she told Detective Brittelli that she had bled into her hand and wiped her blood in the car.  (<u>Id.</u> at 926-27.)  Police did not find any evidence of SV's blood in the vehicle.  (<u>Id.</u> at 943.)  Hair and fibers that were recovered from SV's clothing were not consistent with Petitioner's vehicle. (<u>Id.</u> at 1196-97.)  Hairs and fibers recovered from the floor mats, seat fabric, and clothing found in the back seat and trunk of Petitioner's vehicle were either inconsistent with SV or unusable for testing and comparison.  (<u>Id.</u> at 1195-99.)  On the basis of this testing, Clyde Wells, an expert in the field of hair and fiber analysis from the Suffolk County Crime Lab, determined that he could not conclusively place or exclude SV from being in Petitioner's car. (<u>Id.</u> at 1205-06.)  On cross examination, defense counsel elicited that although animal hair was recovered from many areas in Petitioner's vehicle, no animal hair was found on SV.  (<u>Id.</u> at 1208.)

Ann Juston, a DNA expert from the Suffolk County Crime Lab, testified that DNA taken from a semen-stained shirt found in

Petitioner's car was insufficient in size to obtain a complete DNA profile. (Id. at 1262-63.) However, the sample was large enough to test for a partial DNA profile, which was consistent with Petitioner's DNA and the DNA of at least two other people. (Id. at 1262.) Ms. Juston also testified that SV could not be excluded as a contributor of the DNA. (Id. at 1262-63.)

Karen Dunseith, a registered nurse who performed the physical examination of SV at Good Samaritan Hospital (the "Hospital") in the hours subsequent to the incident, also testified at trial. (Id. at 1015-1078.) Nurse Dunseith explained that when SV arrived at the Hospital for examination, she went into a restroom to remove her clothes and provide a urine sample. (Id. at 1021.) The purpose of the urine sample was to determine whether SV was pregnant. (Id. at 1068-69; see also Petr.'s Supp. Br., Docket Entry 17, Ex. 7, SANE Report.[3]) Nurse Dunseith was not allowed to administer any medications post-rape unless the urine test for pregnancy was negative.[4] (Trial Tr. at 1068-69.) The urine sample

---

[3] The SANE Report is dated 9/17/03, and was written by Nurse Dunseith once she completed her examination of SV. (Trial Tr. at 1058-59, 1066-67.) The SANE Report refers to a "Urine Pregnancy" under "Studies Performed" and the result indicated on the report is negative. (Petr.'s Supp. Br., Docket Entry 17, Ex. 7, SANE Report.)

[4] The Medication Consent Form included a statement consenting to "[a] urine sample to evaluate [the victim's] kidney function and for pregnancy (women only)."

8

was not included in the rape kit that Nurse Dunseith collected and gave to the police for analysis. (Id. at 1041-1058; see also People's Trial Exs. 21A-I.)

After deliberation, the jury convicted Petitioner on all counts. (Id. at 1484-1488.)

## IV. Sentencing

On June 16, 2005, following a hearing pursuant to New York Criminal Procedure Law Section 400.21, Petitioner was sentenced as a persistent felony offender to an indeterminate term of imprisonment of twenty-two years to life for each of his Sodomy in the First Degree convictions; an indeterminate term of imprisonment of twenty years to life for each of his convictions for Sodomy in the Second Degree and Sexual Abuse; and one year of imprisonment for each of his Endangering the Welfare a Child convictions. The sentences were imposed concurrently.

## V. Appeal

Petitioner's direct appeal raised five grounds. First, that the trial court abused its discretion by allowing the testimony of the DNA expert who could only testify that the DNA evidence was inconclusive. Second, that the court further abused its discretion by allowing Petitioner's two-year-old driver's license photograph, which depicted Petitioner with facial hair, into evidence. Third, that the prosecutor engaged in prosecutorial

misconduct during her summation by making statements which improperly shifted the burden of proof onto Petitioner and improperly vouched for witness credibility.  <u>Fourth</u>, that the evidence was insufficient to prove his guilt beyond a reasonable doubt.  <u>Fifth</u>, that the sentences imposed were harsh and excessive. The Appellate Division, Second Department, affirmed the conviction and sentences.  <u>People v. Schouenborg</u>, 42 A.D.3d 473, 840 N.Y.S.2d 807 (2d Dep't 2007).  Petitioner sought leave to appeal, which was denied, <u>see</u> <u>People v. Schouenborg</u>, 9 N.Y.3d 926, 844 N.Y.S.2d 181, 875 N.E.2d 900 (2007).

DISCUSSION

I. <u>Standards of Review</u>

    A.   <u>AEDPA</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner when prior state adjudication of the prisoner's case "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  A state-court decision is contrary to clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially

indistinguishable from a decision of [the Supreme] Court but reaches a different result." <u>Brown v. Payton</u>, 544 U.S. 133, 141, 125 S. Ct. 1432, 161 L. Ed. 2d 334 (2005). "A state-court decision involves an unreasonable application of [the Supreme] Court's clearly established precedents if the state court applies [them] to the facts in an objectively unreasonable manner." <u>Id.</u> Clearly established Federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 660-61, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004) (internal quotation marks and citation omitted).

    B.   <u>Mixed Habeas Petitions</u>

        This is a "mixed petition" because it contains exhausted and unexhausted claims. <u>See</u> <u>Rhines v. Weber</u>, 544 U.S. 269, 275, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005). A court presented with a mixed petition has three options: (1) dismiss the mixed petition, <u>see</u> <u>id.</u> at 273; (2) stay the mixed petition and allow a petitioner to return to state court to exhaust his unexhausted claims, <u>see</u> <u>id.</u> at 277; or (3) The federal district court can deny the petition on the merits, <u>see</u> 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The district court may grant a stay of an

11

unexhausted petition only if the claim is not "plainly meritless" and if the petitioner can provide "good cause" for his failure to properly exhaust all of the claims at the state level.[5] <u>Id.</u> at 277.  Therefore, when ruling on a mixed petition, the Court must examine the unexhausted claims to determine if they meet the <u>Rhines</u> criteria, <u>i.e.,</u> if there is good cause and potential merit.

II. <u>The Instant Petition and Unexhausted Claims</u>

The Petition explicitly raises four grounds for habeas relief:  (1) the prosecutor withheld drug urinalysis results from the Petitioner[6]; (2) the prosecutor committed prosecutorial misconduct by denying Petitioner a speedy trial and by providing false information about Petitioner's prior convictions to the Appellate Division; (3) the trial court abused its discretion by admitting a photograph of Petitioner taken two years prior to the incident; and (4) Petitioner did not have a fair and impartial jury at trial.  In addition, the Government liberally construes the

---

[5] The <u>Rhines</u> court also added a third element: that district courts, if granting a stay, impose "reasonable time limits" to insure against the possibility that a petitioner is using the habeas process to engage in "dilatory tactics."  However, as the <u>Rhines</u> court recognized, this concern is most relevant when dealing with "capital [punishment] petitioners."  <u>Id.</u> at 277-78.

[6] On July 31, 2013, the Court sought supplemental briefing from Petitioner and Respondent regarding whether Petitioner intended to assert a violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and whether the prosecutor turned over evidence of SV's urine test.  (<u>See</u> 7/31/13 Electronic Order.) The Court has since received the parties's submissions.

Petition to also raise as grounds for relief that there was insufficient evidence and that Petitioner's trial and appellate counsel provided ineffective assistance of counsel in violation of the Sixth Amendment. The Court agrees that, liberally construing the Petition, Petitioner does raise these grounds.

The Court finds that while most of Petitioner's unexhausted claims are meritless, there is potential merit to his Sixth Amendment ineffective assistance of counsel claim. Therefore, Petitioner's motion for a stay is DENIED as to his meritless claims, but GRANTED as to his claim of ineffective assistance of appellate counsel.

A. Prosecutorial Misconduct

Petitioner asserts three instances of prosecutorial misconduct during his trial: (a) that, prior to trial, the prosecutor failed to turn over evidence of the results of the urinalysis showing SV had marijuana in her system on the night of the incident; (b) that Petitioner was denied the right to a speedy trial because more than seventeen months passed before his case was tried; and (c) that the prosecutor made incorrect statements to the sentencing court and the Appellate Division regarding two past crimes.

The standard for reviewing a habeas claim of prosecutorial misconduct is "'the narrow one of due process, and

not the broad exercise of supervisory power.'" <u>Darden v. Wainwright</u>, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)). A federal court must, therefore, distinguish between "'ordinary trial error of a prosecutor and that sort of egregious misconduct . . . amount[ing] to a denial of constitutional due process.'" <u>Floyd v. Meachum</u>, 907 F.2d 347, 353 (2d Cir. 1990) (quoting <u>Donnelly</u>, 416 U.S. at 647-48). Habeas relief is available only where the prosecutor's actions so infected the trial with unfairness that the resulting conviction is a denial of due process. <u>See Salcedo v. Artuz</u>, 107 F. Supp. 2d 405, 416 (S.D.N.Y. 2000). Prejudice must be measured by a finding that the actions were not only improper, but "had a substantial and injurious effect or influence in determining the jury's verdict." <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 252 (2d Cir. 1998) (internal quotation marks and citation omitted).

To determine whether the alleged misconduct is so significant as to amount to a denial of due process, the habeas court must place the alleged wrongful actions or alleged prejudicial remarks in context. <u>See Darden</u>, 477 U.S. at 179. When analyzing whether a petitioner has shown actual prejudice, the Court should consider the following relevant factors: "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the

14

trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." Bentley, 41 F.3d at 824 (internal citation omitted).

### 1. Prosecutor's Alleged Brady Violation

Petitioner claims that the Government was obligated to introduce any evidence which would have exculpated him at trial. Specifically, Petitioner claims that the Government had an affirmative obligation to turn over urinalysis results which showed that SV had traces of marijuana in her system on the night of the incident. Such evidence, he claims, directly contradicts her statements to police and her trial testimony that she did not smoke marijuana on the night of the incident. Under Brady, the prosecution has an affirmative obligation to disclose evidence it knows to be exculpatory and favorable to the defendant's case. 373 U.S. at 86.

However, no such violation occurred here as the evidence that Petitioner claims was not turned over does not exist. Petitioner claims he never received the results of SV's urinalysis showing that she had drugs in her system on the night of the incident. As explained above, see supra pp. 8-9, Nurse Dunseith testified, and the hospital records submitted by Petitioner in supplemental briefing show, that SV's urine sample was taken only to evaluate her kidney function and to see if she was pregnant.

(Trial Tr. at 1058-59, 1068-69; see also Petr.'s Supp. Br., Docket
Entry 17, Exs. 7 & 8, SANE Report and SANE Program Medication
Consent Form.)   Respondent affirms that the results of the
pregnancy and kidney function tests were provided to Petitioner's
counsel.  (Resp. Supp. Aff. Opp'n Pet. ¶¶ 5-10.)   In fact, on
cross-examination, Petitioner's counsel questioned Nurse Dunseith
about the purpose of the urine sample collected from SV.  (Trial
Tr. at 1068-69.)  Respondent further affirms that no other testing
was done on SV's urine, and that once the testing of SV's urine was
completed, SV's urine sample was discarded, and not included in the
Rape Kit given to the police for analysis.  (Resp. Supp. Aff. Opp'n
Pet. ¶¶ 5-9, Trial Tr. at 1041-1058.)  Petitioner offers no proof
to the contrary.  In sum, the prosecution did not violate Brady,
because the evidence Petitioner seeks never existed, and
Petitioner's motion for a stay to exhaust this claim is DENIED.

2. Speedy Trial Claim

The Sixth Amendment to the United States Constitution
guarantees that, "[i]n all criminal prosecutions, the accused shall
enjoy the right to a speedy [] trial . . . ."  U.S. CONST. AMEND. VI.
To determine whether this right has been violated, the Supreme
Court has adopted a balancing test.  See Barker v. Wingo, 407 U.S.
514, 519, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).  Courts
must weigh whether: (1) the delay before trial was uncommonly long;

(2) the government or the criminal defendant is more to blame for that delay; (3) the defendant asserted his right to a speedy trial in due course; and (4) the defendant suffered prejudice. See Doggett v. United States, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). The first inquiry, the length of the delay, is a threshold issue. See id. at 651-52 ("[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay . . . ." (internal quotation marks and citation omitted)); Barker, 407 U.S. at 530. However, there is no precise formula for determining what constitutes a presumptively prejudicial delay. See, e.g., Barker, 407 U.S. at 531 ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.").

Here, more than seventeen months elapsed between Petitioner's arrest and the start of his trial. Petitioner has not alleged that this delay was uncommonly long.[7] But even if

---

[7] Petitioner's charges were serious, and the prosecution of his case required laboratory analysis of several items. But whether a seventeen-month delay is beyond the threshold is unclear based on recent case law. See United States v. Vassell, 970 F.2d 1162, 1164 (2d Cir. 1992) (noting consensus that a delay of over eight months meets the threshold requirement). But see Scott v. Walker, No. 01-CV-7717, 2003 WL 23100888, at *6 (E.D.N.Y. Dec. 30, 2003) (finding no threshold showing where thirteen-month delay before

Petitioner could show sufficient delay to trigger a speedy trial analysis, the other <u>Barker</u> factors do not weigh in his favor. Petitioner was arrested on October 23, 2003, and was indicted on October 28, 2003. The prosecution announced its readiness for trial on November 7, 2003. There is no indication that any of the time from that date forward, through trial on January 10, 2005, resulted from delays by the prosecution.[8] Petitioner did not file a speedy trial motion. Nor does anything in the record indicate that Petitioner was prejudiced by this delay. Accordingly, Petitioner's motion for a stay to exhaust this ground is DENIED.

3. <u>Incorrect Statements to the Sentencing Court and Appellate Division Regarding Petitioner's Previous Felony Convictions</u>

Petitioner argues that the prosecutor committed misconduct during both his sentencing hearing before the sentencing court and in a brief to the Appellate Division regarding two of

---

trial involving serious criminal charges, pre-trial hearings, and DNA testing).

[8] <u>See</u> <u>Thomas v. Phillips</u>, No. 04-CV-0906, 2006 WL 39239, at *9-10 (E.D.N.Y. Jan. 5, 2006) (finding no constitutional violation when less than nine months of twenty-two-month delay was attributable to petitioner and where motion for speedy trial was not made until fifteen months after arrest); <u>McKenzie v. Herbert</u>, 969 F. Supp. 1, 3-4 (E.D.N.Y. 1997) (finding no constitutional violation arising from fifteen-month delay where a substantial portion was attributable to petitioner's actions, where petitioner did not assert his right to speedy trial until thirteen months after initial incarceration, and where petitioner articulated no specific prejudice resulting from the delay).

Petitioner's past crimes.

a.  The 1987 Conviction

Petitioner claims that his 1987 conviction was for attempted arson, not for attempted assault.  The record sheet submitted by Petitioner shows that, although he was arrested in 1986 for Attempted Arson in the Second Degree and for Resisting Arrest, he pleaded guilty to Attempted Assault in the First Degree on January 5, 1987. (Pet'r Br. Ex. I, Repository for NYSID No. 453211L.)  This conviction was accurately presented to the courts.  Accordingly, Petitioner's motion to stay to exhaust this claim is DENIED.

b.  The 1997 Conviction

In 1997, Petitioner was convicted for Sexual Abuse in the First Degree and Assault in the Second Degree.

New York Penal Law § 70.10 authorizes a court to impose an enhanced sentence where a defendant is adjudicated a persistent felony offender.  A persistent felony offender is defined as a person "who stands convicted of a felony after having previously been convicted of two or more felonies."  N.Y. PENAL LAW § 70.10(1)(a).  A previous felony conviction, as applicable here, is a conviction for a felony in any state where the defendant was sentenced to a term of imprisonment of one year or more and for which the defendant served that sentence prior to committing the

present felony.  N.Y. PENAL LAW § 70.10(1)(b).

　　　At Petitioner's felony offender hearing, the Government accurately presented the convictions to the sentencing court, who had to determine whether Petitioner should be sentenced as a persistent felony offender.  (Hearing Tr.[9] at 12-13.)  At the hearing, the court determined that Petitioner had two previous felony convictions--one conviction for Attempted Assault in the First Degree in 1987 and a second conviction in 1997 for Sexual Abuse in the First Degree and Assault in the Second Degree--and that those convictions assessed along with Petitioner's history and character in addition to the nature and circumstances of Petitioner's conduct combined to enhance Petitioner's sentence as a persistent felony offender pursuant to New York Penal Law § 70.10. (Id. at 48-49; Sent. Tr.[10] at 4-7.)  The sentencing court also issued a "Statement of Crimes and Factors Constituting Defendant a Persistent Felony Offender" making it clear that it had the correct information before it, as it correctly categorized the

_____

[9] Citations to the "Hearing Tr." refer to the felony offender hearing held in Case No. 02683-2003 before the Hon. Andrew Crecca on June 9, 2005, in Suffolk County Court.

[10] Citations to the "Sent. Tr." refer to the sentencing held in Case No. 02683-2003 before the Hon. Andrew Crecca on June 16, 2005, in Suffolk County Court.

degrees of Petitioner's 1997 convictions.[11]

Petitioner, however, is correct that the Government mischaracterized his 1997 convictions in their appellate brief opposing Petitioner's argument that his sentence was excessive. In their brief, the Government erroneously stated that in 1997 Petitioner was convicted of two D-class felonies in the First Degree, rather than one D-class felony in the First Degree and one D-class felony in the Second Degree. The Appellate Division affirmed Petitioner's sentence, finding that the sentence was not excessive. Schouenborg, 42 A.D.3d at 474, 840 N.Y.S.2d at 808.

Whether Petitioner was convicted of Assault in the First Degree or Assault in the Second Degree has no bearing on the excessiveness of his sentence, however. Petitioner offers no proof that this error had any impact on him. Petitioner was sentenced to five years' imprisonment for each of the D-class felonies in his 1997 conviction. (Hearing Tr. at 12-13.) In order for his 1997 conviction to be considered toward his adjudication as a persistent felony offender, Petitioner need only have been convicted and served the five year sentence for one of the felonies. As such, the Government's misclassification of the degree of one of his

---

[11] The aforementioned hearing held by the sentencing court and the Statement issued by the sentencing court are both part of the state court record and were available to the Appellate Division.

underlying felonies did not prejudice Petitioner, and Petitioner's motion to stay in this regard is DENIED.

B. <u>Right to a Fair Trial by an Impartial Jury</u>

Petitioner further claims that his Sixth Amendment right to a fair trial by an impartial jury was violated. However, Petitioner offers no factual information to support this claim, nor does he offer any explanation as to how this right was violated. Rather, in support of his Sixth Amendment claim, Petitioner quotes from the Sixth Amendment. Bare, conclusory allegations without supporting facts are insufficient to state a claim for habeas relief, <u>see</u> <u>United States v. Logan</u>, 845 F. Supp. 2d 499, 511 (E.D.N.Y. 2012), and, since Petitioner has not offered an allegation, but only a quote from the Sixth Amendment, Petitioner's motion for a stay in this regard is DENIED.

C. <u>Ineffective Assistance of Trial and Appellate Counsel</u>

Unlike Petitioner's other claims, the Court finds that his claim for ineffective assistance of appellate counsel is potentially meritorious and otherwise meets the <u>Rhines</u> criteria.

1. <u>Potential Merit</u>

Initially, the Court notes that Petitioner's claim regarding ineffective assistance of trial counsel is procedurally barred, as it was not raised on appeal. <u>See, e.g.,</u> <u>Ortiz v. Heath</u>, No. 10-CV-1492, 2011 WL 1331509, at *7-8 (E.D.N.Y. Apr. 6, 2011)

(where the petitioner fails to raise "on-the-record" failures[12] to provide effective assistance in a direct appeal, and the time to bring a "Section 440.10(2)(c)" motion has passed, such a claim is considered exhausted but procedurally barred).[13]

---

[12] The Court reads the Petition to raise primarily "on-the-record" failures by trial counsel, particularly his failure to preserve for appellate review the argument of insufficient evidence to establish Petitioner's identity as the perpetrator and his failure to raise or object to particular arguments.

[13] Whether Petitioner's claim for ineffectiveness of appellate counsel is sufficient to overcome this procedural bar is an issue that will not be addressed at this stage. In order to overcome a procedural bar, Petitioner must show "'cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" Montalvo v. Annetts, No. 02-CV-1056, 2003 WL 22962504, at *21 (S.D.N.Y. Dec. 17, 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). A fundamental miscarriage of justice typically means "actual innocence." See Petronio v. Walsh, 736 F. Supp. 2d 640, 657 (E.D.N.Y. 2010). Although Petitioner does state that he has always maintained his innocence (Pet. at 1), actual innocence requires a showing of "factual innocence," such as through new evidence, which Petitioner has not shown here. Petronio, 736 F. Supp. 2d at 658 (finding that under a "new interpretation of Section 125.25(2)," the evidence presented at trial was legally insufficient to convict the petitioner of depraved indifference murder); see also Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2000) ("The district court's reference to the actual innocence exception is puzzling; Dunham presented no new evidence of his innocence . . . ."); Cobb v. Artus, No. 08-CV-3955, 2010 WL 4242557, at *2 (S.D.N.Y. July 28, 2010) ("[P]etitioner must support his claim of actual innocence with a proffer of 'new reliable evidence' . . . ." (quoting Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004)).

However, Petitioner may also be able to overcome a procedural bar if there was cause for the default and actual prejudice. One potential way of showing cause for the procedural default is through a claim of ineffectiveness of assistance of appellate

However, Petitioner also raises an unexhausted claim for ineffective assistance of appellate counsel. Unlike Petitioner's claim regarding ineffective assistance of trial counsel, a claim for ineffective assistance of appellate counsel cannot be deemed procedurally barred because this argument may still be raised through a writ of <u>coram nobis</u>. <u>See</u> <u>id.</u> *8 (citing <u>DiSimone v. Phillips</u>, 461 F.3d 181, 191 (2d Cir. 2006)). Thus, the issue then becomes whether Petitioner is entitled to a stay to exhaust his claim of ineffective assistance of appellate counsel through bringing such a writ.

To prevail on a claim of ineffective assistance of counsel, Petitioner "must show both that his counsel acted 'outside the wide range of professionally competent assistance,' and that the deficiencies is his counsel's performance were prejudicial to his defense." <u>Jameson v. Coughlin</u>, 22 F.3d 427, 429 (2d Cir. 1994) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 690, 691-92, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). In evaluating whether an attorney's representation has fallen "below an objective standard of reasonableness," <u>Strickland</u>, 466 U.S. at 688, a court must

counsel. <u>Ortiz</u>, 2011 WL 1331509, at *8. "Cause" as required to overcome a procedural bar, however, may require a somewhat stricter standard than "good cause" as part of the <u>Rhines</u> analysis in considering a stay. <u>See</u> <u>Bryant v. Greiner</u>, No. 02-CV-6121, 2006 WL 1675938, at *5 (S.D.N.Y. June 15, 2006).

"indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" id. at 689. "Counsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." Id. at 691 ("[A] heavy measure of deference [is accorded] to counsel's judgments.").

The second prong of the Strickland test requires that any deficiencies in counsel's performance be prejudicial to the defense. See Strickland, 466 U.S. at 692. While a finding of prejudice is not dependent upon a showing "that counsel's deficient conduct more likely than not altered the outcome in the case," id. at 693, the petitioner nevertheless must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995).

It is well established that counsel need not raise every non-frivolous issue simply because a client suggests it "if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983); see also Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir. 1990). Further, there is a

strong presumption that counsel used reasonable professional judgment and conducted himself accordingly. See Clark v. Stinson, 214 F.3d 315, 321 (2d Cir. 2000) (quoting Strickland, 466 U.S. at 689). However, "a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). "The Second Circuit Court of Appeals has adopted the test for ineffective assistance of trial counsel for claims of ineffective appellate counsel." Mabee v. Phillips, No. 05-CV-4182, 2009 WL 3644077, at *5 (S.D.N.Y. Nov. 4, 2009) (citing Bunkley, 68 F.3d at 1521).

In arguing against a claim of ineffective assistance of appellate counsel, the Government essentially asserts that appellate counsel raised five grounds on appeal, and that his failure to raise the frivolous arguments that Petitioner suggests did not render his assistance ineffective. (Resp. Opp. Br., Docket Entry 7, at 20.) However, in characterizing Petitioner's arguments, the Government fails to note that the Petition, liberally construed, can be read to assert that appellate counsel was ineffective because he did not raise the potential ineffectiveness of trial counsel, particularly insofar as trial counsel did not preserve the argument regarding insufficiency of

the evidence to establish Petitioner's identity as the perpetrator. See Schouenborg, 42 A.D.3d at 473, 840 N.Y.S.2d at 808 (finding that insufficiency of the evidence to establish Petitioner's identity as the perpetrator was unpreserved for appellate review). (Compare Pet. at 9 (arguing that trial counsel did a "poor job"), with Pet. at 6 (arguing that appellate counsel disregarded findings and refused to work with Petitioner).) Given the Government's concession that eyewitness testimony was at least one of the central pieces of evidence (see Resp. Opp. Br. at 9 ("We urge that [P]etitioner's guilt, which was established by reliable eyewitness testimony as well as documentary, circumstantial and scientific evidence, was proven beyond a reasonable doubt.")), the Court finds that Petitioner's Sixth Amendment challenge to appellate counsel's failure to raise the fact that trial counsel did not preserve that argument to be potentially meritorious.

2. Good Cause

The Rhines court did not define "good cause," and in the years since Rhines, the Supreme Court has provided little guidance, holding that in certain circumstances a petitioner's "reasonable confusion" may constitute good cause. See Nieves v. Conway, No. 09-CV-3710, 2011 WL 2837428, at *2 (E.D.N.Y. July 14, 2011) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 416, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)); see also Ramdeo v. Phillips, No. 04-CV-

1157, 2006 WL 297462, at *6 (E.D.N.Y. Feb. 8, 2006) (observing that neither the Supreme Court nor the Second Circuit has precisely defined what constitutes "good cause under Rhines."). However, district courts in this Circuit have routinely held that in order to demonstrate good cause, a petitioner must show that "some factor external to the petitioner gave rise to his failure to assert [his] claims in state court." Nieves, 2011 WL 2837428, at *2 (internal quotation marks and citations omitted) (collecting cases); see also Williams v. Marshall, No. 09-CV-7411, 2011 WL 1334849, at *2 (S.D.N.Y. Mar. 30, 2011) ("Although the term 'good cause' has not been defined with geometric precision, most courts have deemed it to require . . . some factor external to the petitioner." (citing Whitley v. Ercole, 509 F. Supp. 2d 410, 417 (S.D.N.Y. 2007))); Ramdeo, 2006 WL 297462, at *2 ("[M]ost of the courts which have thus far engaged in an in-depth analysis of the issue have required that 'good cause' arise from something external, and not fairly attributable, to the petitioner.").

Even without a precise definition of good cause, there is a "general consensus that an ineffective assistance of counsel claim itself is good cause." Bryant, 2006 WL 1675938, at *5 (citing Wallace v. Artus, No. 05-CV-0567, 2006 WL 738154, at *4 (S.D.N.Y. Mar. 23, 2006)). Furthermore, the Court finds that Petitioner "has provided some indication that his failure to

exhaust is, at least in part, attributable to external factors."

Id. at *6.   In documents attached to the Petition, Petitioner

explains that trial counsel did not provide him with requested

legal documents and transcripts and that appellate counsel was

virtually incommunicado.    (Pet. at ECF 26.)    In addition,

Petitioner's motion to compel the Court's assistance in obtaining

transcripts (Docket Entry 15) documents how Petitioner has

unsuccessfully attempted to obtain the state court transcripts.

Accordingly, Petitioner's motion for a stay in this

regard is GRANTED.

III.  Petitioner's Exhausted Claims

The Petition also raises two claims which this Court

considers exhausted: (1) that the trial court abused its discretion

and erred by allowing a two-year-old driver's license photo of

Petitioner into evidence; and (2) that the evidence was legally

insufficient to establish Petitioner's identity as the

perpetrator[14].

---

[14] This claim is procedurally barred and therefore deemed exhausted
because the Appellate Division, Second Department determined that
it was unpreserved for appellate review.    See Schouenborg, 42
A.D.3d at 473, 840 N.Y.S.2d at 808; see also Fama v. Comm'r of
Corr. Servs., 235 F.3d 804, 811 n.4 (2d 2000) ("[W]here a state
court says that a claim is 'not preserved for appellate review' and
then ruled 'in any event' on the merits, such a claim is not
preserved."). Again, the Court will not decide, at this juncture,
whether Petitioner is able to overcome this procedural bar.

While considerations of judicial economy might suggest addressing Petitioner's exhausted claims now, the Court must defer ruling on these claims.  It is the presence of an exhausted claim that allows the Court to stay the proceeding in the first place: "If the Court were to rule on the exhausted claims, it would be left with a petition containing <u>only</u> unexhausted claims; the Court can only dismiss such a petition." <u>Keating v. New York</u>, 708 F. Supp. 2d 292, 303 n.16 (E.D.N.Y. 2010) (emphasis in original). "Accordingly the Court will defer ruling on the exhausted claims and address them if and when the stay is lifted." <u>Id.</u>

IV.  <u>Appointment of Counsel</u>

Although a habeas corpus petitioner has no constitutional right to counsel, the court may appoint counsel "when the interests of justice so require."  18 U.S.C. § 3006A(a)(2)(B).  Courts possess broad discretion when determining whether appointment is appropriate, "subject to the requirement that it be 'guided by sound legal principles.'" <u>Cooper v. A. Sargenti Co., Inc.</u>, 877 F.2d 170, 171-72 (2d Cir. 1989) (quoting <u>Jenkins v. Chemical Bank</u>, 721 F.2d 876, 879 (2d Cir. 1983)).

In deciding whether to exercise their discretion to appoint counsel in a habeas corpus proceeding, a district court must look to the standard set forth by the Second Circuit in determining whether to appoint counsel to indigent civil litigants

under 28 U.S.C. § 1915.  See Lawson v. Taylor, No. 10-CV-0477, 2011 WL 839509, at *1 (E.D.N.Y. Mar. 2, 2011); Williams v. Breslin, 06-CV-2479, 2008 WL 163599, at *1 (E.D.N.Y. Jan. 10, 2008).  The Second Circuit has set forth the guiding legal principle as follows:

> First, the district court must "determine whether the indigent's position seems likely to be of substance." If this threshold requirement is met: "the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact-finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason . . . why appointment of counsel would be more likely to lead to a just determination."

Rivas v. Suffolk Cnty., Nos. 04-4813, 04-5198, 2008 WL 45406, at *1 (2d Cir. Jan. 3, 2008) (quoting Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1986)).  The Second Circuit has explained that these factors are not restrictive and that "[e]ach case must be decided on its own facts."  Hodge, 802 F.2d at 61.

The Court has evaluated the Petition and finds that appointment of counsel is warranted here.  The threshold requirement of Hodge has been met and the balance of factors weighs in favor of appointment of counsel.  Therefore, the Court hereby orders the appointment of counsel from the Criminal Justice Act Habeas Corpus Panel for the purpose of representing Petitioner.

V.  Motion for Assistance Obtaining Transcripts

        Finally, Petitioner also moves for Court assistance in
obtaining transcripts.   (Docket Entry 15.)   As this Court has
appointed counsel, Petitioner's current motion is DENIED with leave
to refile through counsel.

                            CONCLUSION

        For the foregoing reasons, Petitioner's motion for a stay
of his Petition pending exhaustion in state court is GRANTED IN
PART and DENIED IN PART.  It is GRANTED insofar as Petitioner seeks
to exhaust his claim for ineffective assistance of appellate
counsel, but otherwise DENIED.

        In addition, the Court hereby ORDERS that Kevin Keating,
Esq., be appointed as counsel for Petitioner. Mr. Keating, having
accepted the appointment, shall promptly file a notice of
appearance and notify Petitioner of his representation.

        Finally, Petitioner's motion to compel the Court's
assistance in obtaining transcripts is DENIED with leave to refile
through counsel.

        The Clerk of Court is directed to amend the caption to

name the Superintendent of the Auburn Correctional Facility as the Respondent and to mail a copy of this Memorandum and Order to Petitioner.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   September __30__, 2013
         Central Islip, New York